*Shippen, President.
This is a motion, in effect, to discharge the defendant from execution, on the ground of his having been confined by a ca. sa. for the same debt, in the state of New Jersey, and there discharged as an insolvent debtor, by virtue of an act of assembly of that state: and the question is, whether the discharge of his person from imprisonment there, will entitle him to a like discharge here ?
It is contended, that the decisions of even foreign courts of justice, shall have a binding force here ; and that in the situation in which we stand with regard to New Jersey, a sister state, we are under- an additional obligation to pay respect to the decisions of the courts there, by the terms of the articles of confederation.
The judgment of a foreign court establishing a demand against a defendant, or discharging him from it, according to the laws of that country, would certainly have a binding force here ; and not only the decisions of courts, but even the laws of foreign countries, where no .suits have been instituted, would, in some cases, be taken notice of here ; where such laws are explanatory of the contracts, and appear to have been in the contemplation of the parties, at the time of making them; as if the interest of money should be higher in a foreign country where the contract was made, than in that where the suit was brought, the foreign interest shall be recovered, as being understood to be part of the contract. But it does not follow, that every order of a foreign court with respect to the imprisonment of the defendant’s person, or any local laws of that country, with regard to his release from confinement, can have the effect of restraining us from proceeding according to our own laws here. The insolvent law of New Jersey relates not to the substance of the plaintiff’s demand, which had already been established, but merely authorizes the court to make an order, on certain terms, for the discharge of the defendant’s person from imprisonment; which order has no connection with the merits of the cause, and cannot with any propriety be called the judgment of the court in that action ; and the law itself on which the order was founded, is a private act, made for that particular purpose ; it is local in its nature, and local in its terms.
Insolvent laws subsist in every state in the Union, and are probably all different from each other ; some of them require personal notice to be given to the creditors, others do not, as in the present case ; and they have never been considered as binding out of the limits of the state that made them. Even the bankrupt laws of England, while we were the subjects of that country, were never supposed to extend here, so as to exempt the persons of the bankrupts from being arrested.
The articles of confederation, which direct that full faith and credit shall be given in one state to the records, acts and judicial proceedings of the others, will not admit of the construction contended for, otherwise, exe*1921 cut*ons BJight issue in one state upon *the judgments given in an-i other; but seem chiefly intended to oblige each state to receive the records of another as full evidence of such acts and judicial proceedings.
*201 Whatever might have been the effect of an order or judgment of the court of New Jersey, if it had actually discharged the defendant from the plaintiff’s demand, the present order, as well as the act of assembly on which it is founded, is local in its terms, and goes no further than to discharge him from his imprisonment in the jail of Essex county, in the state of New Jersey ; which, if the fullest obedience were paid to it, could not authorize a subsequent discharge from imprisonment, in another jail, in another state.
The motion is, therefore, not granted, (a)

 The case in the text has been repeatedly cited, on questions arising under the insolvent laws of other states; and some erroneous views appear to have been entertained by the profession, respecting its operation and tendency, in consequence of the imperfect statement of facts contained in the report, and in some measure, from a misapprehension of the meaning of the learned judge, by whom it was determined. I am glad, therefore, that the authentic materials contained among the MSS. of President Shippen, enable me to give a satisfactory explanation of the decision.
The proper title of the case is James & Garson v. Samuel Alling. The action in the state of New Jersey, was brought in the supreme court of that state, to May term 1782, and was founded upon a promissory note, drawn by the defendant in favor of the plaintiffs, and dated at Newark, in New Jersey, Nov. 16, 1780, for the sum of 383L payable “ on or before the 16th of December,” following. On the 18th of November 1782, judgment was entered for the plaintiffs, by nil dieit; and, the damages having been assessed at 856J. 2s., judgment was entered accordingly, on the 15th of February 1783. A fi. fa. then issued, and on the return of nulla bona, a oa. sa. was taken out, tested the 1st of April, and returnable the 2d Tuesday of May 1783; under which the defendant was committed.
The action in Pennsylvania, was brought in the common pleas of Philadelphia county, to June term 1783. The defendant was arrested on the 22d of April 1783, and gave special bail in due course. On the hearing of the motion to discharge him from the execution, the following copy of the record of New Jersey was produced.
State of New Jersey, ) Samuel Ailing, Junior, an insolvent debtor, now con-Bssex County, j fined in the jail of this county, having, pursuant to the act of assembly of this state, for that purpose made and provided, passed June 18th, 1783, presented to the inferior court of common pleas of said county of Essex, in the term of September 1783, a petition to said court, that he, the said Samuel Ailing, Junior, might be discharged from his debts and confinement aforesaid, agreeably to said act, and the said Samuel Ailing, Junior, having fully complied with the directions and requisitions contained in said act, in talcing the oaths, advertising in the public newspapers, delivering in an account of his debts and credits, &c., and the majority in value of his creditors having appointed Col. John Noble Cumming, Captain Robert Nichols and Daniel Johnson, assignees of the estate of the said Samuel Ailing, Junior, and a certificate having been produced, under the hand and seal of the said assignees, that he, the said Samuel Ailing, Junior, had legally granted and conveyed, assigned and delivered up, for the use of his creditors, all his real and personal estate, both in law and equity, for the use of his creditors, as also all books and vouchers relative to the same, except the apparel, tools and implements of his trade or calling, and the bed or bedding adjudged to him by the court.
We, the subscribers, two of the judges of the inferior court of common pleas for said county, on this 23d day of October 1783, appointed for the purposes aforesaid, do hereby discharge the said Samuel Ailing, Junior, from his imprisonment from the jail aforesaid; as witness our hands and seals, this 23d day of October, a. d. 1783.
William Bubnet, (L. S.)
John Peck. (L. S.)
*202 The act of New Jersey oí June 18th, 1783 ("Wilson’s Laws, p. 338), under wl ich the discharge took plaoe, merely revived and continued, with some immaterial alteiations, an act passed on the 21st of December, 1771 (Allinson’s Laws, p. 356), entitled “ An act for the relief of insolvent debtors.” This act provided (§ 1), that any person, be ing a resident in the colony, might, “in conjunction with two-thirds of his creditors,” present a petition to the supreme court, or to the inferior court of common pleas; and on his making an assignment of his estate to persons nominated by the creditors, it should be lawful for the court to discharge from imprisonment. Various regulations were enacted for the prevention of fraud, and the distribution of the assets among the creditors, and it was then (by the 12th section) declared, that “every such insolvent debtor, having given up all his or her estate, and conformed in all things to the directions of this act, shall for ever thereafter be discharged from all debts due at the time of the assignment, or contracted for before that time, though payable afterwards, so far as regards the imprisonment or detention of his or her person.”
The remark made by President SniPPBN, in the course of his opinion in the text, that “the law itself, on which the order of discharge was founded, is ‘a private act made for that particular purpose,’ it is local in its nature, and local in its terms,” has led to a misunderstanding of the case, which seems to have been entertained even by Mr. Dallas, the reporter. In his Index, he gives the following syllabus of the decision in James v. Allen, “ A person discharged by a special insolvent act of New Jersey, the act being local in its nature, and local in its lerms, is not thereby protected from his creditors here.” Now, there is nothing in the terms of the act which expressly limits its operation to the state of New Jersey, whatever may be the right of other states so to consider it; and it is certainly not a private act, in the sense in which that expression is usually received ; since it was intended to apply to all persons who might happen to be in confinement for debt. The intention of the learned judge evidently was, to distinguish between laws which have an extra-territorial effect, and those which are purely private, as respects the state by which they are passed; and this appears from the MS. draught of his opinion in my possession, in which the passage runs thus: “ the discharge of the defendant’s person from imprisonment, is unconnected with the merits of the cause, and was pursuant to a law made there for internal purposes, local in its nature, and local in its terms.”
The case of James v. Allen, thus explained, must be taken to have decided that a discharge of the person, under the general insolvent law of another state, did not entitle the party to a discharge from imprisonment in this state, although the particular delu for which he was imprisoned in this state, was contracted in the state in which he was discharged. And this is, undoubtedly, in accordance with the jurisprudence of most of the other states of the union. A different and less satisfactory rule has since been introduced, founded on the uncertain doctrine of comity, under which the insolvent is held to be entitled to a discharge on common bail, “unless the state in which the discharge was given refuses to extend the same courtesy to citizens of this state.”[1] The inconveniences which have been found to attend this rule in practice, are so frequent and numerous, that regret has several times been expressed by the judges at its adoption.[2] A striking instance of its uncertainty as a standard, may be found in the decisions of the adjoining state of New Jersey. In Hilliard v. Greenleaf, 2 Yeates 534; it was stated by the counsel arguendo, that in the case of one Benezet, who had been discharged by the bankrupt act in Pennsylvania, the coui'ts .of New Jersey held his person to he exempted from execution. So, in the case of Rowland v. Stephenson, 1 Halsted 149, where the debt had been contracted in Pennsylvania, and the defendant discharged under the insolvent law of this state, the supreme court of New Jersey ordered an exoneretmr to be entered on the bail-piece. In consequence of these decisions, the practice of the courts of Pennsylvania has been, to discharge on common bail, wherever a discharge has taken place under the insolvent laws of New Jersey. That *203 the law was not considered, however, to be entirely settled in New Jersey, appears from the remarks of Chief Justice Kirkpatrick, in Vanuxem v. Hazlehurst, 1 South. 202, where he says: “ The commonwealth of Pennsylvania might fairly discharge this defendant from the imprisonment of his person; for the imprisonment itself is but the mere mode of enforcing the contract, and no part of the contract itself. But then, this discharge of the person can have no force, but within the limits of the commonwealth,” &c. And in the recent case of Wood v. Malin, 6 Halsted 208, the supreme court of that state,' after full consideration, determined, in exact conformity with the principles of James -a. Allen, that a discharge under the insolvent laws of another state did not entitle the party to be liberated on common bail in New Jersey, although the contract was made in the state where the discharge took place. This being now the general rule of New Jersey, it follows, that the practice of Pennsylvania must be changed, in order that the principle of reciprocity may have due operation. The dignity of the commonwealth, as well as the inconvenience, of the existing practice, seem to me to require that the rule of comity should be reconsidered, and some uniform and determinate principle adopted for questions of this kind, which are now of frequent occurrence.
The cases upon this subject are collected and reviewed in Mr. Ingraham’s valuable Treatise on the Insolvent Laws of Pennsylvania (2d edition, p. 188-201); to which the reader is referred.
In a very recent case, with a note of which I have been favored by the chief justice, the supreme court of this state decided, that where a citizen of Maryland had made application in that state, for the benefit of their insolvent laws, in pursuance of which a provisional assignee had been appointed, a creditor, residing in that state, could not lay an attachment upon a debt due by a resident of Pennsylvania to the insolvent. The court holding that the attaching-ereditor, was bound by the laws of Maryland, and consequently, estopped from gaining any preference inconsistent with those laws. Upon the question whether a creditor, not residing in Maryland, would have been concluded by these proceedings the court abstained from intimating an opinion. Mulliken v. Aughenbaugh, 1 P. & W. 117.

 Per C. J. Tilghman, in Smith v. Brown, 3 Binn. 201.

 See particularly what is said by C. J. Tilghman, in Walsh v. Nourse, 5 Binn. 386.